*Title VII Violation Allegations Glenn H. Stephens III v. United States Department of Agriculture*

The Plaintiff was subjected to discrimination and harassment based on race and reprisal based on prior and current EEOC activity, when:

1. On or about April 28, 2015, EID Acting Chief Dona Marshall prevented the Plaintiff from being considered for a detail and/or transfer to CSD by claiming to Candace Glover that the Plaintiff was "needed in EID," only to constructive discharge the Plaintiff by refusing on or about May to renew the Plaintiff's contract when it expired on May 26, 2015.

2. In April and May, 2015, OA Director Carl Ruiz, and OA Deputy Directors Violet Hall and Kirk Perry permitted the transfer and promotion of an African American female Meishia Hunter from OA's Employment Adjudication Division to CSD but allowed EID Acting Chief Marshall to prevent the Caucasian male Plaintiff from taking detail or making a transfer to CSD.

3. In April and May, 2015, OA Director Carl Martin Ruiz, and OA Deputy Directors Violet Hall and Kirk Perry, and EID Acting Chief Dona Marshall, failed to stop, prevent and remedy discrimination against, harassment of, and reprisal against the Plaintiff by Tina Quarles.

4. In April, May and June, 2015, OA Director Carl Martin Ruiz and OA Deputy Directors Violet Hall and Kirk Perry failed to stop, prevent and remedy discrimination against, harassment of, and reprisal against the Plaintiff by EID Chief Acting Dona Marshall.

5. In May and June 2015, OA Director Carl Ruiz, OA Deputy Directors Violet Hall and Kirk Perry, and EID Acting Chief Dona Marshall, failed to stop, prevent and remedy discrimination against and harassment of the Plaintiff by EID contractors Michelle Griffin and Jeffrey Chandler.

The Plaintiff was subjected to harassment(nonsexual)/hostile work environment based on race, when:

1. On March 9, 10, 11, 2015, Acting Chief Dona Marshall was on a management retreat, Tina Quarles threatened various actions against the Plaintiff when she became Acting Team Lead.

2. On an unspecified date between March 9 and March 11, 2015, Tina Quarles harassed the Plaintiff by loudly proclaiming within his earshot "What use is a Ph.D. I don't need no Ph.D. I don't need no encyclopedia." (The Plaintiff was the only Ph.D. in EID at the time.)

3. On March 11, 2015, Tina Quarles falsely and pretextually criticized the Plaintiff for not submitting modifications to the Ahmed ROI to the Acting Team Lead Tysan Williams at a point in time when Tysan Williams was no longer Acting Team Lead.

4. On March 11, 2015, Tina Quarles angrily screamed at the Plaintiff when he corrected pointed out, by email, that Tysan Williams was no longer Acting Team when the Ahmed ROI modifications were submitted to the vendor.

5. Upon her return from the March 9-11, 2015 management retreat until May 25, 2015, Acting Chief Dona Marshall ceased to communicate with the Plaintiff in the normal professional fashion, in stark contrast with her very professional and usually very pleasant and often rather humorous communicative style prior to that point. Marshall's verbal communications were terse and or/negative in tone. Marshall's e-mails nearly always sharp, negative, snippy, or critical.

6. Upon her return from the March 9-11, 2015 management retreat until May 25, 2015, Marshall failed on a number of occasions to timely respond to important work related e-mails or failed to respond to important work related emails altogether.

7. On or about March 16, 2015, Marshall inaccurately and pretextually criticized the Plaintiff to Panum Project Manager Dhavid Cayanan for time issues and conduct in the Draughn meeting.

8. On or about March 20, 2015, Marshall failed or refused to respond to the Plaintiff's e-mail related to his request for a tour-of-duty change.

9. In March, April and May 2015, Marshall repeatedly excoriated the Complainantt for his errors (real or fabricated) but ignored, downplayed, or rationalized errors or generalized blame when informed of errors by Tina Quarles and the other black Equal Opportunity Specialists, particularly the errors and misrepresentations of Tina Quarles.

10. On March 25, 2015 2:30 PM, Acting Team Lead Tina Quarles inaccurately and pretextually criticized the Plaintiff for failing to upload the ROI in the Mixon case in an e-mail to Dona Marshall.

11. On March 27, 2105 at 1:35 PM, when the Plaintiff complained and provided evidence that Quarles' criticism of the Plaintiff's "failure" to upload the Mixon ROI were unfair because the Mixon disks did not work (as both Jeff Chandler and Mr. Quarles herself found when they tried to upload the ROI), Marshall dismissed the Plaintiff's complaint, claiming, "Glenn......I'm not going to discuss this now."

12. On March 23, 2015, Tina Quarles, after discussion with the Plaintiff of the inclusion of ADR language in the Distribution Letter in the D. Gutierrez case, signed that Distribution Letter and issued the ROI, but later failed to take responsibility for her error.

13. On March 27, 2015, in another example of her racially disparate handling of mistakes, Dona Marshall failed to attribute any fault to Quarles for the inclusion of ADR language in the Gutierrez Distribution Letter. When the Forest Service's Theresa Hedgeman complained on Mar 27, 2015, at 11:56 AM, that ADR language was wrongly included, Marshsall failed to attribute blame to Quarles for that error, March 27, 2015 12:40 PM, "If she was offered adr (sic) it was not intentional. But an oversight on our end."

14. In late March and early April, 2015, Quarles repeatedly misrepresented the case processing facts of the McCorvey case to Marshall in an attempt to blame the Plaintiff for the case's late case age. When the Plaintiff sent Marshall a lengthy and detailed account of the facts, on April 15, 2015, Marshall

15. On April 1, 2015, 10:06 AM Tina Quarles harassed the Plaintiff by responding "What was the purpose of this (sic)" to the Plaintiff's well documented criticisms of the performance of Quarles personal friend Johnathan Draughn and his firm in the Mixon case. In this and other instances, Quarles, like Marshall, applied racially disparate standards regarding performance.

16. In early April 2015, the Plaintiff brought the hostility of the work environment in EID to the attention of Dhavid Cayanan, who proposed that he talk to Marshall about the problem. After they met on or about April 6, 2105, Cayanan told me that he told Dona that both Yamil Jaskille and the Plaintiff complained about harassment by Tina Quarles. When Marshall met with Quarles she told Quarles that that Yamil and the Plaintiff complained about Tina's harassment. That disclosure by Marshall to Quarles led to the harassment of April 8, 2015.

17. On an unspecified (likely early April, 2015), Tina Quarles applied racial disparate standards in her treatment of the conduct of black EES Moses Brown at a staff meeting. When I raised the topic of the Quarles preferred justification for letters (left or justified), Moses Brown loudly proclaimed, "Fuck this, I don't have time for shit like this," and stormed from the room, never to return to the staff meeting. Marshall was not present, having stepped out of the meeting temporarily. Apparently

*Title VII Violation Allegations Glenn H. Stephens III v. United States Department of Agriculture*

    Quarles never reported this conduct by Brown to Marshall (Marshall claimed no knowledge of this event in the April 23, 2015 meeting). No action was taken.

18. On April 6, 2015, Tina Quarles harassed the (Attorney) Plaintiff by seizing on the Office of General Counsel's wrongful claim that the complaint in the McCarthy case untimely filed as an opportunity to attack lawyers (and imliedly the Plaintiff) by saying aloud, within earshot of the Plaintiff, "They [lawyers] are the lowest level of the gene pool and I don't want to work with them anymore."

19. On April 7, 2015, Marshall and Tina Quarles applied racial disparate standards in their treatment of the conduct of Moses Brown, who reacted to finding a document (seemingly the distribution letter) with corrections by Ms. Quarles on his desk, by saying "Fuck this, I am not playing, it is too early in the morning for this shit." Brown then threw the file toward Jeff, saying "Get it out Jeff, I will sign off on the fucking thing." He then said, "I am not her nigger." When Brown realized Michelle Griffin, an African American, heard him use the word "Nigger" he apologized to her.

20. On April 8, 2015, having been told by Marshall that Yamil Jaskille and the Plaintiff complained about her harassment, Quarles harassed the Plaintiff by saying loudly within his earshot "He thinks he has a target on his back, it is just because he keeps doing stupid shit."

21. On April 9, 2015, Marshall harassed the Plaintiff by ordering Panum to order the Plaintiff to cease putting "Esq." after his name in correspondence on the pretextual grounds that the Office of General Counsel instructed Marshall to do so.

22. On and after April 13, 2015, Quarles harassed the Plaintiff by failing respond to and act upon the Plaintiff's request that she assist the Plaintiff (who lacked EFX access) with the uploading of documents responsive to the judge's order in the case of Carl Piper.

23. On and after April 13, 2015, Quarles harassed the Plaintiff by failing or refusing to sign the EEOC distribution letter for purposes of the EFX upload pursuant to the judge's order.

24. On and after April 13, 2015, Quarles harassed the Plaintiff by failing or refusing to sign the EEOC distribution letter for purposes of the EFX upload pursuant to the judge's order.

25. On April 22, 2015, Marshall harassed and discriminated against the Plaintiff by failed to respond, let alone act, when the Plaintiff informed Marshall that Quarles failed or refused to sign the Piper EEOC distribution letter and to assist the Plaintiff with uploading documents on EFX and that a timely upload only occurred because Jeffrey Carr assisted.

26. At various points from mid-April, Marshall harassed the Plaintiff by feigning ignorance of and misrepresenting the case age of the Ibrahim case (despite the fact that the Plaintiff, Quarles, and Violet Hall all informed Marshall that the case age was not calculated from the date that the complaint was filed because an amendment was submitted and accepted thereafter).

27. On April 15, 2015, the Plaintiff e-mailed OA Director Carl Martin Ruiz regarding Quarles bullying and harassment. On the afternoon of April 17, 2015 Quarles retaliated by requested a meeting with Ruiz to discuss "Glenn's work."

28. On April 17, 2015, when the Plaintiff returned to EID after meeting with OA Director Ruiz, he was harassed by Quarles; Quarles said loudly to Jacky Lenzy within earshot of the Plaintiff, "On Monday, I am taking it to the head of (OA)." And "It will be either that one or me. One of us has to go." She then said something about what she would do if someone attacked her reputation.

*Title VII Violation Allegations Glenn H. Stephens III v. United States Department of Agriculture*

29. On or about April 28, 2015, the higher level USDA officials conducting the OASCR "all hands" meeting harassed and discriminated against the Plaintiff (who is 1/8 Hispanic) by referring to a female Hispanic employee Alicia Rodriguez with term "A Rod." The official's statement that "we call Alicia 'A Rod'" brought a round of laughter from the almost entirely black audience.

30. On or about May 12, 2015, the Plaintiff was informed that his contract would not be renewed after it expired after May 25, 2015. The pretext for that termination was a business development email the Plaintiff sent to Candace Glover of CSD regarding possible contracting with Panum.

31. On May 20, 2015, Quarles harassed the Plaintiff by loudly requesting by loudly pronouncing, knowing I was within ear shot, that she would not continue to carry the McCorvey case on her reports, claiming "it was screwed up before I got it." She then asked Jeffrey Chandler to falsify his records to show that she was no longer handling the case, despite the fact she had been handling the McCorvey case since April 15th. Jeff replied that he tried to keep the McCorvey case off Tina's reports [after it Tina took it over] but that "someone [the Plaintiff] kept kicking it back." (This statement constitutes an admission by Chandler that he falsified his records.)

32. For a considerable period of the time, the white Plaintiff was the only person working in EID to lack a laptop. Even when the Plaintiff complained that his desktop was working so poorly that it slowed and compromised his work, he was not provided with a laptop. When the white Plaintiff left employment in EID he still had a desktop, not a laptop like the black employees.

The Plaintiff was subjected to harassment and discrimination based on race and reprisal based on EEO activity (including his opposition to Quarles' harassment and discrimination), when:

1. On an unspecified date during the week of April 13 to April 17, 2015, Marshall walked to Michelle Griffin's cubicle where she was overheard by a witness to direct Griffin to submit inaccurate information in work report and work report related documents even if it was known that the information in question was inaccurate or could be updated. This direction by Marshall resulted in a series of falsifications and fabrications of my work reports by Griffin in April. Jeffrey Chandler, who works closely with Griffin, later admitted falsifying documents.

2. On an unspecified date in June, 2015, in an attempt to intimidate potential witnesses and influence their testimony, Marshall met with Griffin and Chandler and told them that she [Marshall] didn't direct their falsification of work reports and other documents.

3. In June 2015, Marshall fired the witness (Jackie Williams) who heard Marshall direct the falsification of work reports by Michelle Griffin (Williams was identified on Icomplaints as a witness in the Plaintiff's case.)

4. On June 16, 2015, Candace Glover of CSD harassed and retaliated against the Plaintiff by releasing information about his EEOC claim to the United State Attorney without the consent and without the requisite showing of an intra-agency need to know in violation of the Privacy Act.

5. On September 10, 2015, Joseph Leonard and Ravoyne Payton wrongly closed the Plaintiff's Privacy Act complaint against Candace Glover.

1. USDA by Candace Glover refused or failed to investigate, in any manner, the above-complaint allegations as required by the MD 110, including of the Plaintiff's employee status.

2. USDA untimely filed a Final Agency Decision without any investigation of the complaint.